UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ELIZABETH CARPENTER,

       Plaintiff,

v.

JUDGE NEIL G. MULLALLY, STATE
OF MICHIGAN PROBATE COURT FOR
THE COUNTY OF MUSKEGON, LYNNE
WORFEL, WATERWAY, WILHOLT,
WORFEL & BRONSINK, LLC, WENDY
PARR HOLTVLUWER, MILLER JOHNSON,
NURSE MARY, RALPH RODGERS,
GLADYS ROGERS, DAVID SKIDMORE, ESQ.,
WARNER, NORCROSS & JUDD, PATSY
HAMLIN, and TOM ROGERS,

       Defendants.

Case No. 1:14-CV-522

HON. GORDON J. QUIST

_____/

## **OPINION**

      Elizabeth Carpenter, a pro se plaintiff, is dissatisfied with the outcome of a Michigan probate court proceeding involving a guardianship for her developmentally-disabled adult sister, Barbara J. Rogers. Elizabeth alleges that the participants—the probate judge, her siblings, the court-appointed guardian, and their attorneys and law firms—all of whom she has sued, conspired to violate Elizabeth's federal civil rights under the First, Sixth, Eighth, Ninth and Fourteenth Amendments. Elizabeth contends that the guardianship proceeding was really about control of Barbara's multi-million dollar estate, rather than Barbara's best interests.

      Defendants have moved to dismiss Elizabeth's Second Amended Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. As explained more fully below, the Court concludes that because Elizabeth complains of injuries arising from the probate court's orders

and rulings, the *Rooker-Feldman* doctrine bars this Court from asserting jurisdiction over Elizabeth's claims. Alternatively, even if the *Rooker-Feldman* doctrine does not prevent review of some or all of Elizabeth's claims, her claims fail as a matter of law under federal pleading standards. Finally, Elizabeth's claims against Defendant Neil G. Mullally, the probate judge, are barred under the doctrine of absolute judicial immunity. Therefore, the Court will grant Defendants' motions and dismiss the Second Amended Complaint with prejudice.

## I. BACKGROUND

Barbara Rogers is a developmentally-disabled adult. (2d Am. Compl. ¶ 17, Dkt. # 42, at Page ID#561.) Elizabeth and Defendant Patsy Hamlin are Barbara's sisters, and Defendant Ralph Rogers is Barbara's brother. Defendant Gladys Rogers is Ralph's wife, and Defendant Tom Rogers is Ralph and Gladys's son. Although Barbara suffers from various medical conditions, she has lived independently for many years, with some supervision by Ralph, Gladys, Tom or Elizabeth with regard to financial and medical issues. (*Id.*; Dkt. # 72-2 at Page ID#970.) Over the years, however, Elizabeth has disagreed with Ralph and Gladys regarding the management of Barbara's medical care.

On October 6, 2009, Ralph and Gladys filed a petition in the Muskegon County Probate Court requesting that they be appointed partial guardians for Barbara. (Dkt. # 72-2.) Defendant David Skidmore, an attorney with the law firm of Warner, Norcross & Judd, filed the petition for Ralph and Gladys and represented them in the probate case. The case, captioned *In re Barbara J. Rogers*, Case No. 09-85971-DD, was assigned to Defendant Muskegon County Probate Judge Neil G. Mullally. Elizabeth, through counsel, filed an objection to the appointment of Ralph and Gladys as guardians for Barbara. (Dkt. # 58-4.) On November 23, 2009, Judge Mullally entered an Uncontested Order Maintaining Status Quo for Barbara Rogers' Medical Care that prohibited any person from taking Barbara to see any medical provider other than the providers she was currently

seeing. (Dkt. # 58-3 at Page ID#787.) Contrary to the November 23, 2009 order, Elizabeth took Barbara out of Michigan on at least one occasion to see another medical provider. Consequently, Judge Mullally held Barbara in contempt of court and ordered her to pay Ralph $1,000 in sanctions. (Dkt. # 58-6.)

In July 2010, Judge Mullally entered a stipulated order appointing Defendant Lynne Worfel, of the firm Waterway, Wilholt, Worfel & Bronsink, LLC, as an independent and professional Guardian for Barbara, "with authority to make healthcare and medical decisions, to make decisions concerning living arrangements, and to handle significant and/or non-routine financial or property transactions." (Dkt. # 72-3 at Page ID#985–86.) Pursuant to that order, Worfel made various decisions regarding Barbara's medical care and living environment. In addition, Worfel adopted Guidelines For The Care of Barbara Rogers which, among other things, imposed limitations on Elizabeth's interaction with Barbara. (Dkt. # 42 at Page ID#565, ¶¶ 32–33; Dkt. # 72-6 at Page ID#1022.) Although Elizabeth had stipulated to Worfel's appointment, she soon began to challenge Worfel's decisions through various motions her counsel filed in the probate court. Worfel therefore retained Defendant Wendy Parr Holtvluwer, of the Miller Johnson law firm, to represent her in the proceeding. (Dkt. # 42 at Page ID##564–65; Dkt. # 74-1 at Page ID#1103.)

On February 10, 2012, Elizabeth filed a Motion to Place Barbara J. Rogers in Covenant Village and for Medical Evaluation. (Dkt. # 72-4.) Judge Mullally ultimately denied Elizabeth's motion, but before doing so, he appointed an independent visitor, Margaret O'Toole, to investigate Barbara's status and make recommendations regarding her health care and living arrangements. Based on her investigation and interview of Barbara, Ms. O'Toole recommended that Barbara's living arrangements and established medical care should be continued under the direction of Worfel. (Dkt. # 72-5.) Thus, Judge Mullally concluded that Elizabeth's request to move Barbara to Covenant Village should be rejected.

On August 2, 2012, Elizabeth filed a Motion for Relief from Order, seeking to set aside the stipulated order appointing Worfel as Barbara's Guardian or, alternatively, a modification of Worfel's authority as Guardian and the visitation Guidelines that Worfel had established. (Dkt. # 72-6.) On November 2, 2012, following a hearing on the motion, Judge Mullally denied the motion as untimely and ordered Elizabeth to pay Warner, Norcross & Judd and Miller Johnson each $1,000 as sanctions for filing her untimely motion. (Dkt. # 72-7.) On or about March 25, 2013, Elizabeth filed a Petition to Modify Guardianship. (Dkt. # 72-8.) On June 25, 2013, after hearing oral argument on the petition, Judge Mullally denied Elizabeth's petition and denied Worfel's and Ralph's requests for sanctions against Elizabeth. (Dkt. # 72-9.) The following day, Judge Mullally entered an order for a bill of peace, which required Elizabeth to seek leave of court before filing any future motions in the case. (Dkt. # 72-10.)

Unhappy with the probate court proceedings, Elizabeth filed a Complaint in the Northern District of Illinois on January 15, 2014, naming essentially all of the participants in the guardianship proceeding as Defendants. After Elizabeth amended her Complaint, Defendants moved to dismiss the Amended Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue. On May 8, 2014, the Illinois court transferred the case to this Court pursuant to 28 U.S.C. § 1404 or 1406. (Dkt. # 46.) This Court subsequently granted Elizabeth leave to file a Second Amended Complaint. Defendants have now renewed their Motions to Dismiss.

## II. MOTION STANDARDS

A motion under Federal Rule of Civil Procedure 12(b)(1) tests the court's subject matter jurisdiction. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003). In response to a properly supported Rule 12(b)(1) motion, the plaintiff bears the burden of establishing that subject matter jurisdiction exists. *DLX, Inc. v. Commonwealth of Ky.*, 381 F.3d 511, 516 (6th

4

Cir. 2004). Federal courts are presumed to lack jurisdiction unless the record affirmatively establishes the existence of such. *Renne v. Geary*, 501 U.S. 312, 316, 111 S. Ct. 2331, 2336 (1991).

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)). The court must accept all of the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).[1]

---

[1] In ruling on a Rule 12(b)(6) motion to dismiss, a district court "'may consider [only] the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendants' motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein.'" *Frisch v. Nationwide Mut. Ins. Co.*, 553 F. App'x 477, 481 (6th Cir. 2014) (quoting *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)). Because the probate court proceeding is central to Elizabeth's claims in this case, and Elizabeth refers to Judge Mullally's orders in that case, this Court may properly consider those documents in disposing of Defendants' motions under Rule 12(b)(6).

5

### III. DISCUSSION

As noted above, Elizabeth alleges that Defendants engaged in a conspiracy to violate her federal civil rights in the probate court proceeding. Elizabeth brings her claims pursuant to 42 U.S.C. § 1983 and 18 U.S.C. § 242. For relief, Elizabeth requests compensatory and punitive damages, that this Court report "Neil et. al" "to the Michigan State DA for a scheme to defraud in the first degree and the criminal acts of perjury to a sworn statement, and larceny for stealing from a [sic] elderly DD person's multi-million dollar estate," and that this Court report Defendants Worfel and Holtvluwer "to the Michigan DA for the criminal acts of using an [sic] false instrument 'Visitation Guidelines.'" (Dkt. # 42 at PageID#570.)

**A.  The *Rooker-Feldman* Doctrine Precludes This Court From Exercising Jurisdiction Over Elizabeth's Second Amended Complaint**

The *Rooker-Feldman* doctrine has its roots in the Supreme Court's decisions in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923), and provides that lower federal courts are without authority to review final judgments of state courts in judicial proceedings. This is because "only the Supreme Court of the United States has the jurisdiction to review state court decisions." *Coleman v. Governor of Mich.*, 413 F. App'x 866, 870 (6th Cir. 2011) (citing *Rooker*, 263 U.S. at 416, 44 S. Ct. at 150)); *see also Givens v. Homecomings Fin.*, 278 F. App'x 607, 608–09 (6th Cir. 2008). The Supreme Court has clarified the scope of the doctrine, confining it to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521-22 (2005). In light of *Exxon Mobile*, the Sixth Circuit "distinguishe[s] between plaintiffs who bring an impermissible attack on a state court judgment—situations in which *Rooker-Feldman*

applies—and plaintiffs who assert independent claims before the district court—situations in which *Rooker-Feldman* does not apply." *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 606 F.3d 301, 309 (6th Cir. 2010). For purposes of determining the doctrine's application, the Sixth Circuit has explained that the proper focus is the source of the plaintiff's claimed injury:

> The inquiry then is the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).

The instant case undoubtedly satisfies one requirement of the *Rooker-Feldman* doctrine: Elizabeth is a state-court loser. The remaining question is whether Elizabeth is complaining of injuries caused by Judge Mullally's orders and rulings—all rendered before Elizabeth filed her Complaint in this case—and seeking review and rejection of those orders and rulings by this Court. Elizabeth insists that she is not requesting that this Court review or reverse Judge Mullally's orders, but her allegations in the Second Amended Complaint suggest otherwise. For example, Elizabeth alleges that:

- "Liz had a dishonest judge, defendant Neil (referring to Judge Mullally), that has caused Barb and Liz to suffer mentally and physically from defendant Neil's criminal acts." (Dkt. # 42 at Page ID#558, ¶ 2.)

- "Defendants Neil et al. have prevented Barb from living in an assisted living [facility] where she would be safe . . . ." (*Id.* at Page ID#559, ¶ 3.)

- "Liz took [Barbara] to get therapy, and Defendant Lynne refused to authorize this therapy when Liz wrote an email asking for her permission, which we now know that the 'Guidelines' the defendants Neil et. al., were illegal and false." (*Id.* at Page ID##559–60, ¶ 7.)

- "In the process of committing these crimes, the defendants Neil et.al, violated Liz's civil rights to due process, in the Muskegon County Probate Court." (*Id.* at Page ID#560, ¶ 12.)

7

- "To continue with the conspiracy and to ensure that Liz would be out of her sister Barb's life . . . the defendants Lynne and Wendy, sanctioned by Neil et. al, created a false document that prevented Liz and Barb, from seeing each other without permission from the defendants Lynne through Wendy . . . ." (*Id.* at Page ID#564, ¶ 31.)

- "The 'Visitation Guidelines' were a set of rules and stipulations that Neil et. al, conspired and created to keep Liz from interfering with Barb and to keep the two sisters from seeing each other , . . . Neil et.al, intentionally quoted a law that was giving them the power to create these Guidelines at Liz, all while the defendants knew that no such law existed that gave them this power." (*Id.* at Page ID#565, ¶ 32.)

- "Neil et. al., Order that Liz's DD sister stay in a [sic] unsafe home with stairs without handrails for Barb to climb up and down, knowing all the time that the house is a death trap for Barb to fall and seriously hurt herself or it could be fatal." (*Id.* at Page ID#567.)

- "Defendant Neil signed an Order that prevented Liz from taking her DD sister Barb out of Muskegon County for any doctor appointments, even though Liz had been taking her DD sister to teaching hospitals for over 6 years . . . ." (*Id.* at Page ID##567–68.)

The foregoing allegations demonstrate that Elizabeth is complaining of injuries arising from Judge Mullally's orders, including his order precluding Elizabeth from taking Barbara outside of Michigan, his stipulated order appointing Worfel as Barbara's Guardian, his order denying Elizabeth's motion to place Barbara in Covenant Village, and his order imposing a bill of peace against Elizabeth. In *Hall v. Callahan*, 727 F.3d 450 (6th Cir. 2013), the plaintiffs filed an action under 42 U.S.C. § 1983 against a state-court judge and others, alleging that the state-court judge's dismissal of their claims in various cases they filed violated their due process and equal protection rights. The plaintiffs argued that their claims were not barred by the *Rooker-Feldman* doctrine because their injury was caused by a third party—the state judge—rather than the state-court judgment itself. The court rejected the argument, stating, "Judge Cross was not a third party, but the presiding judge. This directly implicates *Rooker-Feldman* concerns. Indeed, . . . errors made by state court judges are barred from consideration." *Id.* at 454 (citing *McCormick*, 451 F.3d at

8

394). Similarly, in this case, Elizabeth's claim that Judge Mullally facilitated an illegal conspiracy through his conduct of the probate proceedings, including the orders he issued and the rulings he made, directly implicates *Rooker-Feldman* because Judge Mullally was the judge who made the contested rulings, which are beyond review by this Court.

*Kropek v. Sullivan*, No. 13-cv-13573, 2013 WL 6195581 (E.D. Mich. Nov. 26, 2013), illustrates another application of *Rooker-Feldman* to allegations that were similar to those Elizabeth makes in this case. In *Kropek*, the plaintiff sued two state-court judges for alleged civil rights violations that occurred during a summary proceeding that resulted in the plaintiff's eviction from his residence after a mortgage foreclosure. The plaintiff alleged that the state-court judges conspired with others to deny him his due process rights. The court observed: "Plaintiff claims that Judge McConnell's and Judge Sullivan's rulings were improper and caused him to lose his home. To agree with Plaintiff would be to hold that Judge McConnell and Judge Sullivan erred. In other words, any relief in this action could 'only be predicated upon a conviction that the state court proceeding was wrong.'" *Id.* at *4 (quoting *Hutcherson v. Lauderdale Cnty.*, 326 F.3d 747, 756 (6th Cir. 2003)); *see also Passmore v. Turner*, No. 13-11865, 2014 WL 988892, at *2 (E.D. Mich. Mar. 12, 2014) (holding that because the plaintiff's injuries stemmed from the state-court's child custody decisions finding the plaintiff in contempt and refusing to consider the plaintiff's evidence, the court was without jurisdiction to review the claims). Although Elizabeth does not specifically request this Court to reverse or set aside Judge Mullally's orders, as in *Kropek*, this Court can grant Elizabeth relief only if it concludes that Judge Mullally's orders were wrong or invalid because Elizabeth's complaints of injury stem directly from Judge Mullally's orders in the probate court proceeding, which this Court may not review. Moreover, as the Sixth Circuit observed in *Hall*, if Elizabeth was dissatisfied with Judge Mullally's orders and decisions, her remedy was an appeal through state court.

9

To the extent Elizabeth alleges that Worfel and/or Holtvluwer acted improperly by adopting the Visitation Guidelines or making unwise decisions regarding Barbara's living arrangements and medical care, this Court is also barred from reviewing such a claim. The Sixth Circuit has explained that "if a third party's actions are the product of a state court judgment, then a plaintiff's challenge to those actions are in fact a challenge to the judgment itself." *McCormick*, 451 F.3d at 394. Here, Judge Mullally's stipulated order appointing Worfel as Barbara's Guardian authorized Worfel to make decisions and/or act on Barbara's behalf. Worfel's actions of which Elizabeth complains, including the adoption of the Guidelines, were thus a direct product of Judge Mullally's order appointing her as Barbara's Guardian. *See Willner v. Frey*, 243 F. App'x 744, 747 (4th Cir. 2007) ("The state court's issuance of the final order in *Fairfax I* triggered Frey's duty to enter that order in the county's land records. The Willners thus complain of an injury caused by the state court.").

Finally, Elizabeth seeks to avoid the bar of *Rooker-Feldman* by arguing that Defendants prevailed in the probate court proceeding through fraud. As the Court noted in its June 10, 2013 Order (dkt. # 59), the Sixth Circuit has held that a plaintiff's allegation that the underlying state-court judgment was procured through fraud is not barred by the *Rooker-Feldman* doctrine. *See McCormick*, 451 F.3d at 392. To the extent that Elizabeth alleges that any Defendant other than Judge Mullally or Worfel procured Judge Mullally's orders through fraud, such allegations would not be barred. However, as explained below, Elizabeth's conclusory allegations of fraud are nonetheless subject to dismissal.

**B.     Elizabeth's Second Amended Complaint Fails to State a Valid Claim**

As a pro se plaintiff, Elizabeth is entitled to a liberal construction of her Second Amended Complaint. *See Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). Even so, she fails to state a valid claim upon which relief can be granted.

As mentioned above, Elizabeth alleges in broad terms that Defendants conspired to violate her rights under the First, Sixth, Eighth, Ninth and Fourteenth Amendments. "A civil conspiracy is an agreement between two or more person to injure another by unlawful action. . . . All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). It is well established that a plaintiff must plead a conspiracy claim with particularity and must provide more than "vague and conclusory allegations." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (internal quotation marks omitted). Elizabeth's conspiracy claim fails because it is based on little more than conclusory allegations. Elizabeth simply alleges unrelated and independent actions by each Defendant in the probate proceeding, and concludes that a conspiracy must have existed. Such allegations are insufficient to withstand a motion to dismiss.[2] *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987).

Elizabeth's claim is also subject to dismissal because she alleges no facts showing how her rights under the First, Sixth, Eighth, Ninth, or Fourteenth Amendments were violated.[3] While Elizabeth does allege in vague terms that her due process rights were violated, she provides no specifics. In fact, as set forth above, Elizabeth was represented by counsel, who filed motions on

---

[2] Elizabeth's claims under § 1983, whether or not alleged as part of a conspiracy, fail for the additional reason that no Defendant, except Judge Mullally—who is entitled to absolute immunity as a judge—is a state actor who could be held liable under § 1983. *See Hidden Village, LLC v. City of Lakewood*, 734 F.3d 519, 527 (6th Cir. 2013) (noting that "§ 1983 makes state actors liable for violating federal constitutional rights").

[3] Elizabeth's claim under the Sixth Amendment, whatever it may be, fails because the Sixth Amendment does not apply to civil cases. *See Hardy v. Vieta*, 407 F. App'x 1, 4 (6th Cir. 2010). Elizabeth's claim under the Eighth Amendment fails because that amendment applies only to convicted prisoners. *See Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002). Elizabeth fails to allege in any manner how the Ninth Amendment, which provides that "the enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people," has any application in this case. Finally, she fails to allege how Defendants violated her First Amendment rights.

11

her behalf throughout the probate proceeding. Elizabeth's disagreement with Judge Mullally's rulings does not give rise to a due process violation.[4]

As for Elizabeth's allegations of fraud, she fails to allege fraud with particularity, as required by Federal Rule of Civil Procedure 9(b). Moreover, Elizabeth's fraud allegations are nothing more than unsupported conclusions. Elizabeth alleges no facts in support of her fraud assertions, and her rhetoric that Judge Mullally's orders were procured by fraud is not a substitute for facts.

Finally, Elizabeth's claim that Defendants violated 18 U.S.C. § 242 fails because that statute is a criminal statute that does not provide a private right of action. *See United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) ("Finally, the district court properly dismissed Oguaju's claim pursuant to 18 U.S.C. §§ 241 or 242 because Oguaju has no private right of action under either of these criminal statutes.") (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994)); *see also Bey v. Smith*, No. 10-14641, 2011 WL 5506904, at *7 (E.D. Mich. Oct. 21, 2011) (noting that even if the defendant violated 18 U.S.C. §§ 241 or 242, "these criminal statutes do not provide Plaintiff with a private cause of action").

### C. Judge Mullally is Entitled to Absolute Immunity

It is well established that a judge is absolutely immune from suit seeking monetary relief, so long as the judge was performing judicial functions. *See Mireles v. Waco*, 502 U.S. 9, 9-10, 112 S. Ct. 286, 288 (1991) (per curiam). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Id.* at 11, 112 S. Ct. at 288. Judicial "immunity applies to actions brought under 42 U.S.C. § 1983 to recover for alleged deprivation of civil rights." *Stern v. Mascio*, 262 F.3d 600, 606 (6th Cir. 2001). A judge is not immune (1) where the judge's alleged actions

---

[4] In her response to Defendants' motions, but not in her Second Amended Complaint, Elizabeth states that her due process rights were violated because she was denied a hearing and not permitted to "see the Defendant Mullally." (Dkt. # 76 at Page ID#1162.) The Court has found no case holding that an interested party in a guardianship proceeding has a due process right to see the presiding judge in person.

12

were not taken in the judge's judicial capacity or (2) where the actions, although judicial in nature, were taken in the complete absence of jurisdiction. *Mireles*, 502 U.S. at 11-12, 112 S. Ct. at 288. "[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356-57, 98 S. Ct. 1099, 1105 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)) (footnote omitted).

Elizabeth's allegations against Judge Mullally are limited to actions that he took while acting as a judge. Her own allegations, as well as the documents in the records, show that there can be no serious dispute that, at all pertinent times, Judge Mullally was acting in his judicial capacity and well within his jurisdiction as a probate judge. Therefore, Judge Mullally is immune from suit.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motions to Dismiss and dismiss Elizabeth's Second Amended Complaint with prejudice.

An Order consistent with this Opinion will enter.


Dated: September 5, 2014                           /s/ Gordon J. Quist
                                                                               GORDON J. QUIST
                                                       UNITED STATES DISTRICT JUDGE